WERNER, GDN., ET AL., APPELLANTS, *v.* GUTTMAN ET AL., APPELLEES.
WERNER, GDN., ET AL., APPELLEES, *v.* GUTTMAN ET AL., APPELLANTS.

(Nos. 8614 and 8613—Decided April 27, 1959.)

*Mr. Carl G. Werner*, for appellants in case No. 8614 and appellees in case No. 8613.

*Mr. Harry Kasfir*, for appellees in case No. 8614 and appellants in case No. 8613.

LONG, J.  Plaintiffs are owners of the fee simple title of certain real estate described in their petition, and defendants are the holders of two 99-year leases, renewable forever. The leases, dated 1853, are the same, except that, in one, $1,500 of insurance is provided, and, in the other, $800 of insurance is required, making a total of $2,300.

The cases, by agreement of counsel, were tried together. The insurance clause as to both leases binds the lessees as follows: "To insure each of the buildings so erected for at least, $1,500 in lease book 9, page 484; and $800 in Lease Book 9, page 570, against loss by fire * * * and such insurance under any circumstances in the case of destruction or injury of said building by fire shall be applied to the erection of other buildings thereon

of equal value of brick or stone, or both, or repairing the same in case of partial injury.''

The ground rent, required by the leases, amounting to $1,637.84 per annum, has been paid (by agreement of counsel) to June 2, 1957. On April 2, 1954, the lessees increased the amount of insurance to $20,000. On February 28, 1956, a fire partially destroyed the building, and, by agreement of the parties, settlement of the fire insurance claim resulted in the payment to the lessees by the insurance company of $11,000. Right after the fire, lessors made demand on the lessees to make repairs in accordance with the terms of the lease. However, the state, in the meantime, was making preparations indicating that it was going forward with appropriation proceedings involving the property in question. The city of Cincinnati had, prior to the fire, indicated that the property in question would be needed in connection with the Third Street distributor. In any event, under the circumstances and as provided by ordinance, the lessees could not get a permit from the building commissioner to make the repairs. Finally, by agreement of the parties and in the exercise of its right of eminent domain, the state agreed to pay into court the sum of $77,162 for the property which it took.

It will be noted that the agreement of the parties for distribution of the appropriation funds ultimately resulted in the payment to the plaintiffs, owners of the fee, the sum of $27,297, and to the defendants, owners of the perpetual leasehold, the sum of $49,865. Keeping in mind the annual rental at $1,637.84, it is obvious that the division of the appropriation funds was predicated on the payment to the owners of the fee an amount arrived at by capitalizing the rentals at six per cent. By agreement of the parties, all this was done without prejudice to the claims of the parties as to the $11,000 insurance fund which, by the way, is held in escrow by Mr. Kasfir, attorney for the lessees. All other controversies between the parties have been adjusted.

The sole question before this court is who gets the $11,000 insurance. In arriving at a solution of the problem, we must first consider the nature of the interest of the parties in the property in question. It is well settled in Ohio that in a situation of this kind the owners of the fee stand in the position of a

mortgagee; the insurance is simply a security *pro tanto* to protect the payment of their rent. But the lessors received all their rent. The lessees were not required to insure beyond $2,300. How, in any event, would the lessors be entitled to any of the increase above the $2,300?

The lessors take the position that if the lessees had erected a building costing $200,000, which they had a right to do, and if the lessees had insured for $200,000, they, the lessors, would be entitled to the $200,000. With this reasoning we cannot agree.

In 19 Ohio Jurisprudence (2d), 559, Section 136, we read this: "In distributing, between lessor and lessee, an award in an eminent domain proceeding for the taking of property held under a ninety-nine-year lease renewable forever, the *lessee* must be considered *as the owner in fee* and the *lessor* as holding an interest similar to that of a *mortgagee*. The lessor should receive the cash value of his interest as determined by capitalizing rentals during the entire period of the lease [which was done by agreement of the parties in the case at bar] and * * * the balance of the award going to the lessee."

In other words, the insurance is merely security for the payment of the rent. The owner of the fee is entitled to receive his rent, and when that is paid he has received all to which he is entitled.

Lessors argue that the insurance originally was provided for the benefit of the lessors; but we must define that benefit. Does that mean that whatever the amount of the insurance, in the event of fire, when eminent domain is invoked, that the lessor gets all the insurance? We do not so understand that to be the definition of benefit in such case. True, there is a benefit to the lessors, but it is simply the benefit of security for the payment of the rent. Once the lessors receive the payment of the rent, as occurred in the case at bar, the security itself, that is, the insurance—all of it—is payable to the lessees.

Argument is made that but for the fire the state would have paid more for the property. However, the amount paid the lessors would have been the same; capitalization of their rentals would not be changed. The amount would be the same if the lessees, after the fire, had built a skyscraper on the lot.

Therefore, we conclude that the $11,000 insurance is payable to the lessees.

An entry modifying the judgment of the court below will be entered here.

*Judgment accordingly.*

MATTHEWS, P. J., and O'CONNELL, J., concur.